CASEY JOHN CAMERON,

      Plaintiff,

      v.                           Case No. 26-cv-0535-bhl

NP HAYES, DR. DAUGHTRY,
HSA GUGLER, HSA BAER
NP SPRINGS, DR. MALO,
DR. BRUNO, NP TREZBTOWSKI, and
JOHN AND JANE DOES,

      Defendants.

---

## SCREENING ORDER

---

Plaintiff Casey John Cameron, who is currently serving a state prison sentence at Dodge Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Cameron's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Cameron has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Cameron has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an initial partial filing fee of $51.37. Cameron's motion for leave to proceed without prepaying the filing fee will be granted.

### SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

According to Cameron, since beginning his incarceration in 2021, he has been suffering from chronic pain due to a fractured coccyx and carpal tunnel syndrome. He details numerous interventions over the past five years to address his pain, including diagnostic testing, referrals to offsite specialists, prescriptions for numerous pain medications, surgery, a steroidal injection, referral to physical therapy, and comfort accommodations such as a donut cushion. Notwithstanding these many efforts, Cameron asserts that Defendants' failure to resolve his pain demonstrates their deliberate indifference to his serious medical condition.

2

## THE COURT'S ANALYSIS

To prevail on an Eighth Amendment medical care claim, a plaintiff must show an "objectively serious medical condition" that each Defendant "responded to with deliberate indifference." *Goodloe v. Sood*, 947 F.3d 1026, 1030 (7th Cir. 2020). Cameron's allegations of severe, chronic pain from a fractured coccyx and carpal tunnel syndrome are sufficient for the Court to reasonably infer that he suffers from an objectively serious medical condition. The only issue, therefore, is whether he has sufficiently alleged that Defendants were deliberately indifferent to his complaints of pain.

The Seventh Circuit has explained that an official acts with deliberate indifference when he or she was aware of but disregarded a substantial risk of harm to an inmate's health. *Id.* at 1031. Prisoners "can establish deliberate indifference by showing that medical personnel persisted with a course of treatment they knew to be ineffective." *Id.* Also, "inexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference." *Id.* The Seventh Circuit has also acknowledged, however, that "the Eighth Amendment does not entitle incarcerated patients to their preferred pain medication, nor does it impose the unrealistic requirement that doctors keep patients completely pain free." *Arce v. Wexford Health Sources Inc.*, 75 F.4th 673, 681 (7th Cir. 2023); *see Norwood Ghosh*, 723 F. App'x 357, 366 (7th Cir. 2018) ("Medical professionals cannot guarantee pain-free lives for their patients."); *see Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033-34 (7th Cir. 2019) (affirming summary judgment because plaintiff provided no evidence that *any* treatment would have provided relief from his chronic back pain).

While it appears from Cameron's allegations that over the years Defendants made many efforts to address his complaints of pain, development of the record is necessary to determine whether those efforts were adequate for Eighth Amendment purposes or whether, in light of their ineffectiveness, a jury could reasonably conclude that Defendants were deliberately indifferent to Cameron's pain. Accordingly, Cameron may proceed on an Eighth Amendment claim against Nurse Practitioner Trezbtowski, Dr. Daughtry, and Nurse Practitioner Hayes based on allegations that they were not sufficiently responsive to his persistent complaints of pain, delayed pursuing treatment options, and/or persisted in treatments he informed them were ineffective.

Cameron does not, however, state a claim against Dr. Brett Malo, an orthopedic specialist at an offsite clinic. Cameron alleges that in January 2024, Dr. Malo ordered a new EMG study to

3

assess Cameron's carpel tunnel syndrome and recommended a steroidal injection to address his lower body pain. The injection was administered by Dr. Malo a few months later in May 2024. Cameron asserts that he received only about a month of pain-relief following the injection. Following a second referral in September 2024, Dr. Malo recommended diclofenac gel and internal floor physical therapy as well as a prescription for meloxicam. The Court cannot reasonably infer from these allegations that Dr. Malo was deliberately indifferent to Cameron's condition. To the extent Cameron believes he should have received the injection sooner or that he should have received additional injections or medications, nothing suggests that Dr. Malo—an offsite provider—had any control over those decisions. He is not liable simply because his recommendations were not followed by Cameron's providers at his institution. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (holding that §1983 requires that an individual be personally involved in the alleged constitutional violation).

Cameron also does not state a claim against Dr. Bruno, another offsite provider, for similar reasons. According to Cameron, once it was determined that no further surgical intervention was possible to address his carpal tunnel syndrome, Dr. Bruno recommended that Gabapentin be prescribed for Cameron's nerve pain. According to Cameron, this recommendation was denied by the medical director. The mere fact that Dr. Bruno's recommendation was denied does not reasonably imply that he was deliberately indifferent to Cameron's condition. Cameron also alleges that Dr. Bruno opined about the possibility of surgery to address his coccyx pain, but he noted concerns about interfering with surrounding nerve tissue and the spinal dura. Again, Dr. Bruno is not liable simply because his recommendations for surgery were not approved.

Cameron also does not state a claim against Health Services Administrator Gugler. Cameron asserts that he submitted health services requests directed to her attention complaining about the treatment he was (or was not) receiving, but she did not respond. Instead, nurses responded by confirming the medication and referrals that were in place. The Court cannot reasonably infer from these allegations that Gugler was deliberately indifferent to Cameron's complaints. First, nothing suggests that Gugler ever received the requests, as nurses regularly triage and respond to requests without directing them to the health services administrator. Moreover, the health services administrator is an administrative role, and nothing suggests that Gugler was responsible for treatment decisions. Gugler was therefore entitled to defer to the decisions of his medical providers, even if Cameron registered his disagreement. *See Arnett v.*

4

*Webster*, 658 F.3d 742, 755–56 (7th Cir. 2011) (holding that "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands").

Nor does Cameron state a claim against Nurse Practitioner Springs, Health Services Administrator Baer, or John and Jane Doe Defendants. Although he names them in the caption of his complaint, the body of his complaint does not contain any allegations indicating what they did or did not do to violate his rights. The Court notes that Cameron also names numerous other providers and staff members in the body of his complaint who he does not identify as Defendants in the caption of his complaint, suggesting that he does not wish to sue them. Moreover, the Court notes that it cannot reasonably infer from his allegations that any of the individuals named in the body of his complaint but not in the caption of his complaint violated his constitutional rights. It thus appears that their names are included simply to provide context.

Finally, the Court will exercise supplemental jurisdiction over state law medical negligence claims against Nurse Practitioner Trezbtowski, Dr. Daughtry, and Nurse Practitioner Hayes. However, Cameron does not state a claim for intentional infliction of emotional distress. "To recover damages for intentional infliction of emotional distress, a plaintiff must show: 1) that the defendant's conduct was intentional, that is, the defendant behaved as he did for the purpose of causing emotional distress; 2) that the defendant's conduct was extreme and outrageous; 3) that defendant's conduct caused the injury; and 4) that the plaintiff suffered an extreme and disabling emotional response to the conduct." *Kennedy v. Children's Serv. Soc. of Wisconsin*, 17 F.3d 980, 986 (7th Cir. 1994). Given the extensive treatment that Cameron received, the Court cannot reasonably infer that Defendants behaved as they did for the purpose of causing emotional distress. Defendants prescribed numerous medications, referred him to offsite specialists, and recommended various interventions including surgery. Cameron believes they should have done more, but his dissatisfaction does not reasonably suggest that their conduct was "extreme or outrageous" or "a complete denial of [his] dignity." *Id.* at 986-87.

## MOTION TO APPOINT COUNSEL

Cameron asks the Court to appoint counsel because Defendants work at different institutions, which will make it difficult for him to investigate his claims. In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*,

5

706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)).

It does not appear that Cameron has satisfied the first prong. He makes no mention of having made any effort to locate counsel. A plaintiff can generally satisfy this requirement by informing the Court of the names and contact information of at least three lawyers who the plaintiff has contacted, along with the lawyers' responses, if any. In any event, the Court believes Cameron is capable of representing himself through discovery and the briefing of summary judgment. During discovery, Cameron will communicate with Defendants' counsel, so where Defendants work will not impact his ability to gather the information he believes he needs to prove his claims. If new challenges arise that Cameron does not believe he can overcome on his own, he may renew his request. If he does so, he should detail his efforts to locate counsel without the Court's help and be specific about what challenges he faces and what efforts he has made to overcome them.

### REQUEST TO PAY REMAINDER OF THE FILING FEE FROM HIS RELEASE ACCOUNT

On April 30, 2026, Cameron requested that he be permitted to pay the remainder of the filing fee using funds in his release account. The Prison Litigation Reform Act (PLRA) applies to this case because Cameron was incarcerated when he filed his complaint. That law requires the Court to collect filing fees from a "prisoner's account." 28 U.S.C. §1915(b). Wisconsin prisoners have two types of accounts, a regular account and a release account. *Spence v. McCaughtry*, 46 F. Supp. 2d 861, 862 (E.D. Wis. 1999). "A release account is a restricted account maintained by the Wisconsin Department of Corrections to be used upon the prisoner's release from custody upon completion of his sentence." *Wilson v. Anderson*, Case No. 14-C-798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (citing Wis. Admin. Code § DOC 309.466).

Given the purpose of the release account, federal courts do not focus on that account as the source of funds to satisfy the filing fee payment requirements. *See Smith v. Huibregtse*, 151 F. Supp. 2d 1040, 1042 (E.D. Wis. 2001). Although federal courts will sometimes allow a plaintiff to pay the initial partial filing fee with funds in his release account, federal courts are less willing to allow a plaintiff to pay the full filing fee from that account. Allowing this practice would significantly deplete the value of the prisoner's release account, thereby undermining the very

6

purpose of the account.  Accordingly, the Court will deny Cameron's motion for leave to use funds in his release account to pay the remainder of the civil case filing fee.  Cameron must pay the remainder of the fee over time as set forth in §1915(b).

**IT IS THEREFORE ORDERED** that Camerion's motion for leave to proceed without prepaying the filing fee (Dkt. No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that Cameron's motion for an order allowing him to pay the remainder of the filing fee from his release account (Dkt. No. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that Cameron fails to state a claim against HSA Gugler, HSA Baer, NP Springs, Dr. Malo, Dr. Bruno, and John and Jane Does, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Camerion's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on NP Hayes, Dr. Daughtry, and NP Trezbtowski.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, NP Hayes, Dr. Daughtry, and NP Trezbtowski shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Cameron is located.

**IT IS FURTHER ORDERED** that the agency having custody of Cameron shall collect from his institution trust account the $298.63 balance of the filing fee by collecting monthly payments from Cameron's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.  If Cameron is transferred to another institution, the transferring institution shall forward a copy of this Order along with Cameron's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

7

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Cameron is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Milwaukee, Wisconsin this 21st day of May, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

8